*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JULIE A. BOLEN,

        Plaintiff-Appellee/Cross-Appellant,

v

MARADA INDUSTRIES, INC., doing business as
COSMA BODY ASSEMBLY MICHIGAN,

        Defendant-Appellant/Cross-Appellee.

UNPUBLISHED
February 18, 2021

No. 348765
Oakland Circuit Court
LC No. 2018-163688-NO

Before: CAVANAGH, P.J., and JANSEN and SHAPIRO, JJ.

SHAPIRO, J. (*concurring*).

I concur because I am bound by the Michigan Supreme Court's decisions in *Kidder v Miller-Davis Co*, 455 Mich 25; 564 NW2d 872 (1997), and *Farrell v Dearborn Mfg Co*, 416 Mich 267; 330 NW2d 397 (1982). I write separately to urge the Supreme Court to reconsider its holdings in those cases.

Michigan courts look negatively upon a party's attempt to "double dip." That is exactly what defendant seeks to do in this case. It argues that two wholly separate entities are *both* granted immunity from suit under MCL 418.131 of the Worker's Disability Compensation Act (WDCA), even though only one of them has obtained applicable worker's compensation insurance, without which immunity is improper. Justice RYAN's dissent in *Farrell* clearly spells out why applying the WDCA's exclusive-remedy provision in this manner is improper from both a legal and a market perspective:

> My colleague's approach suggests that if two companies can divide the attributes of employment equally enough, *both* will be entitled to the "exclusive remedy" bar of the statute, even though only one set of workers' compensation insurance premiums must be paid. In short, my colleague's opinion advertises "two bars for the price of one."
>
> Moreover, from a purely policy perspective, the Court's decision enables a company to insulate itself from the economic consequences of an unsafe work place. It seems clear that the Legislature contemplated that either total liability or

higher workers' compensation insurance rates would provide an economic incentive for every company to care about worker safety. It now appears that the labor broker scheme may be an expedient method of avoiding either type of liability. [*Farrell*, 416 Mich at 286-287 (RYAN, J., dissenting in part).]

Justice RYAN's argument became even more compelling after the decision in *Robinson v City of Detroit*, 462 Mich 439; 613 NW2d 307 (2000), a case concerning the interpretation of the governmental tort liability act in which the Supreme Court held that the term "the," being a definite article, *must* be construed as referring to a single item: "[W]e must follow these distinctions between 'a' and 'the.'" *Id*. at 462. The Court went on to state: "[R]ecognizing that 'the' is a definite article, and 'cause' is a singular noun, it is clear that the phrase 'the proximate cause' contemplates one cause." *Id*.

The proper ruling in this case can be determined merely by substituting the word "employer" for "cause" and "proximate cause" in the foregoing passage so that it would read: "Recognizing that 'the' is a definite article and 'employer' is a single noun, it is clear that the phrase 'the employer' contemplates one employer." Thus, following *Robinson*, when the WDCA[1] states that it provides the exclusive remedy as to "the employer," MCL 418.131(1), it refers to a single employer.

Putting aside the question of statutory interpretation, it is also clear that ATCO is not a typical labor broker. It provides professional level specialists to its clients and although their work places ATCO employees at the client's workplace, they are not treated as the client's employees. They are not fully integrated into the client's workplace or perform the same work as the client's direct employees perform. In this case, in addition to not counting as defendant's employees for purposes of worker's compensation, plaintiff and the other ATCO employees worked under the direction of ATCO supervisors and could not be assigned to other work by defendant.

Finally, it is evident that the nature of some employment relationships has changed since the *Kidder* and *Farrell* decisions. The "gig" economy has blurred the lines between employers, contractors, employees and labor brokers. If for no other reason than the need to consider whether and how to address these changes, the Supreme Court should grant leave to appeal.

/s/ Douglas B. Shapiro

---

[1] The language of the act is what controls. "The Workmen's Compensation Law is a departure, by statute, from the common law, and its procedure provisions speak all intended upon the subject. Rights, remedies and procedure thereunder are . . . only[] as the statute provides." *Baughman v Grand Trunk Western R Co*, 277 Mich 70, 72; 268 NW 815 (1936). See also *Lash v Traverse City*, 479 Mich 180, 189; 735 NW2d 628 (2007) ("We presume that the Legislature intended the common meaning of the words used in the statute, and we may not substitute alternative language for that used by the Legislature.").